**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

ALEJANDRO LIMON RUVALCABA,

Petitioner,

v.

TODD BLANCHE, *et al.*,

Respondents.

Case No. 2:26-cv-01312-RFB-BNW

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Alejandro Limon Ruvalcaba's Petition for Writ of Habeas Corpus, which he filed pursuant to 28 U.S.C. § 2241. See generally Pet. for Writ of Habeas Corpus, ECF No. 1-1 [hereinafter, "Petition"]. Through it, he challenges the lawfulness of his ongoing detention at the Henderson Detention Center ("HDC") in the custody of Immigration and Customs Enforcement ("ICE"). Specifically, Respondents are detaining Petitioner without providing an opportunity for release on bond, as they assert that he is subject to 8 U.S.C. § 1225(b)(2)(A). See Resp'ts' Return 1–2, ECF No. 7 [hereinafter, "Opposition"]. In turn, Petitioner argues that his detention violates: (i.) the Immigration and Nationality Act ("INA") and (ii.) the Fifth Amendment's Due Process Clause. See Petition at 2–3; Traverse at 3, ECF No. 13. Indeed, Petitioner asserts that his detention is void *ab initio*, such that he is entitled to immediate release from government custody. See Traverse at 2–3.

In defense, Respondents invoke their novel statutory interpretation of § 1225(b)(2)(A) to justify Petitioner's detention. See generally Opposition. This Court is well acquainted with Respondents' interpretation of the INA, as the Court has repeatedly rejected it as unlawful. See, e.g., Jacobo Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at *34–35 (D. Nev. Mar. 30, 2026) (collecting cases). In fact, the Court recently granted relief on this precise

issue in a related class-action, which is inextricably intertwined with this case. Specifically, the Court: (i.) declared that Respondents' interpretation is wrong; (ii.) declared that members of the Jacobo Ramirez Class are entitled to a bond hearing, and additionally procedural protections, under 8 U.S.C. § 1226(a); and (iii.) vacated Respondents' related policies—namely, the Board of Immigration Appeals's decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). See Jacobo Ramirez, 2026 WL 879799, at *33–34. As discussed below, the Court finds that Petitioner is a member of the Jacobo Ramirez Class. Therefore, his ongoing detention is unlawful under the INA and its implementing regulations. Furthermore, the Court also finds that Respondents are violating the Due Process Clause *in tote*, as they are detaining Petitioner without supplying any procedural safeguards or legitimate justifications. Finally, the Court concludes that Petitioner must be immediately released from government custody, as his detention has been unlawful from the very moment it began. Thus, the Court grants Petitioner a writ of habeas corpus and orders Respondents to immediately release him from custody.

## I.    CLASS MEMBERSHIP

From the outset, the Court finds that Petitioner is a member of the Jacobo Ramirez Class. This certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Id. at *4 (citation omitted). Based on the Parties' undisputed factual allegations, and the evidence they supply, the Court finds that Petitioner satisfies these criteria. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings). First, Petitioner is an undocumented noncitizen who is actively being detained by ICE. See R. of Inadmissibility/Deportability 2, ECF No. 7-1 [hereinafter, "I-213"]; Traverse at 2. Second, he is in removal proceedings before the Las Vegas Immigration Court, which sits in the United States

District of Nevada. See Notice to Appear 4, ECF No. 7-1 [hereinafter, "NTA"]. Third, DHS alleges that Petitioner entered the United States without inspection, admission, or parole. See id. at 4 & 7; I-213 at 2–3. Fourth, Respondents are detaining him pursuant to § 1225(b)(2)(A); in other words, the government is not asserting that Petitioner is subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See Opposition at 1–2. Fifth, Petitioner was arrested well within our country's interior, long after he entered the United States. See I-213 at 2. In sum, Petitioner clearly falls within the Jacobo Ramirez Class, and he is entitled to the relief afforded to the Class by this Court. Cf. Navarro v. Mukasey, 518 F.3d 729, 737 (9th Cir. 2008) ("They are, accordingly, class members eligible for relief."). Indeed, Respondents concede as much through their Return. See Opposition at 1 (". . . Petitioner is a Class Member.").

Therefore, Petitioner's ongoing detention is unlawful, as the government is improperly subjecting him to mandatory detention under § 1225(b)(2)(A), even though he is eligible for release on bond under § 1226(a) and its implementing regulations. See Jacobo Ramirez, 2026 WL 879799, at *33–34.

## II.     DUE PROCESS

The Court also finds that Petitioner's detention violates the Due Process Clause of the Fifth Amendment. The Court has previously clarified that similarly situated noncitizens are entitled to due process under the Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d. 1123, 1158–60 (D. Nev. 2025); Jacobo Ramirez v. Noem, --- F. Supp. 3d. ---, 2025 WL 3270137, at *8–9 (D. Nev. Nov. 24, 2025). The Court incorporates these holdings, and their underlying reasoning, by reference, and it applies them to the facts of this case. The Court now turns to Petitioner's due process claims.

### A. *Procedural Due Process*

To determine whether detention violates procedural due process, courts apply the three-part balancing test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203–1207 (9th Cir. 2022) (collecting cases and clarifying that the Mathews test is appropriate in the context of immigration detention). Specifically, courts weigh

the following three factors: (1.) "the private interest that will be affected by the official action"; (2.) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3.) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation omitted).

On balance, these factors weigh heavily in favor of Petitioner because: (1.) Respondents are depriving Petitioner of his fundamental liberty interest in being free from incarceration; (2.) the risk of an erroneous deprivation of liberty is extraordinarily high where immigration officials have the sole, unguided, and unreviewable discretion to detain Petitioner; and (3.) Respondents' interest in enforcing immigration law is served by a proper bond hearing, which Petitioner is entitled to under the INA. Cf. Escobar Salgado, 809 F. Supp. 3d. at 1160–62 (elaborating on this same analysis and reaching these same conclusions).

**B. *Substantive Due Process***

Outside of the criminal context, government detention violates the substantive component of the due process clause "unless the detention is ordered . . . in certain special and narrow nonpunitive circumstances, . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (citations and quotation marks omitted). To date, Respondents have not asserted an individualized justification—let alone a special or compelling justification—for depriving Petitioner of his freedom. Instead, Respondents fall back on their faulty statutory interpretation, which indiscriminately condemns an ocean of noncitizens to mandatory detention. See generally Opposition. But the Constitution demands more than that. The Executive Branch cannot round up noncitizens, incarcerate them, and decline to justify their own actions. In doing so, they strike "at the core of the liberty protected by the Due Process Clause from arbitrary governmental action:" freedom. See Hamdi v. Rumsfeld, 524 U.S. 507, 529 (2004) (citation omitted). In the absence of any justification for Petitioner's detention, which is poised to last for an untold period of time, the Court concludes that Respondents are also violating the substantive component of the Due Process

- 4 -

Clause. Cf. Escobar Salgado, 809 F. Supp. 3d. at 1162 (elaborating on this same analysis and reaching the same conclusion).

For the foregoing reasons, the Court has little difficulty concluding that Petitioner's detention violates his right to procedural and substantive due process and is, therefore, unconstitutional.

### III.    REMEDY

Having found that Petitioner's ongoing detention is unlawful, the Court turns to the proper remedy. Before fashioning a remedy for this specific case, the Court outlines some general principles which govern habeas corpus proceedings. Federal courts have equitable discretion to fashion habeas relief as "law and justice require." Brown v. Davenport, 596 U.S. 118, 132 (2022) (quoting 28 U.S.C. § 2243). Indeed, this Court's remedial power is "broad and flexible" when it sits in habeas. See U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (citation omitted); Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief. . . . The court is free to fashion the remedy as law and justice require . . . .") (citation omitted). Nonetheless, since "[h]abeas is at its core a remedy for unlawful executive detention," "[t]he typical remedy for such detention is, of course, release." Munaf v. Geren, 553 U.S. 674, 693 (2008) (citations omitted). Since Mr. Ruvalcaba's detention is void *ab initio*, the Court finds that the typical remedy is the appropriate one in this case.

Put differently, Petitioner's detention has been unlawful from the very moment it began; specifically, Respondents have deprived him of significant procedural protections which cannot be replicated unless he is released from government custody. Recall, Mr. Ruvalcaba is properly subject to 8 U.S.C. § 1226(a), which supplies a suite of procedural protections vis-à-vis its implementing regulations. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196–97 (9th Cir. 2022). Relevant here, ICE must obtain a warrant, and make an initial custody determination, to detain a noncitizen under 8 U.S.C. § 1226(a). Beginning with the warrant requirement, ICE must generally obtain an administrative warrant (*i.e.*, a Form I-200) to arrest a noncitizen under § 1226(a). See Djiwaje v. Bondi, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753, at *2 (D. Nev. Apr. 6, 2026)

(citing 8 C.F.R. § 236.1(b)(1)); see also 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, [a noncitizen] may be arrested . . . .").[1] Even when they do, a noncitizen is entitled to an individualized, initial custody determination at the outset of detention. See Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). Essentially, when a noncitizen is arrested, they can secure their freedom by showing that they are neither dangerous nor a flight risk; insofar as the arresting officer agrees, "[t]he [noncitizen] will be released." Id. (citing § 236.1(c)(8)). Overall, the warrant requirement, the initial custody determination, and the full constellation of procedural safeguards embedded into § 1226(a) serve as powerful bulwarks against the arbitrary, erroneous, and unconstitutional deprivation of liberty. See Rodriguez Diaz, 53 F.4th at 1209. And, to state the obvious, they are mandatory under federal law. See Backcountry Against Dumps v. Fed. Aviation Admin., 77 F.4th 1260, 1267 (9th Cir. 2023) ("A federal agency . . . is obliged to abide by the regulations it promulgates.") (citations and quotation marks omitted).

Nonetheless, it appears that Respondents have swept them under the rug. In short, Respondents have declined to submit any evidence which demonstrates that ICE obtained a warrant, or conducted an initial custody determination, for Mr. Ruvalcaba, even though this Court explicitly ordered them to do so. See Order Appointing Counsel 2–3, ECF No. 4 (Apr. 29, 2026). In fact, Respondents do not attempt to argue that they complied with § 1226(a), and its implementing regulations, when they detained Petitioner. See generally Opposition. On this record, the Court must conclude that Respondents failed to satisfy their own binding regulations and, in doing so, denied Mr. Ruvalcaba key procedural protections which he is entitled to, in violation of this Court's judgment in Jacobo Ramirez. Critically, Respondents cannot cure these violations by conducting a *post-hoc* bond hearing, as the warrant requirement and the initial custody determination are designed to prevent unjustified detention in the first instance. Put differently, "ordering a bond here 'would effectively allow the [g]overnment to transform an unlawful detention into a lawful one through *post-hoc* justifications.'" Melendez Paz v. Mullin, No. 2:26-cv-00296-RFB-MDC, 2026 WL 1194944, at *7 (D. Nev. May 1, 2026) (quoting Zheng

---

[1] While the INA provides certain exceptions for warrantless arrests, these exceptions are narrow, limited, and irrelevant to this case, as the government does not invoke them. See Djiwaje, 2026 WL 926753, at *2 (citing 8 U.S.C. § 1357).

v. Rokosky, No. 26-cv-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026)). The Court will not bless Respondents' "detain first, justify later" approach to peoples' liberty, which eviscerates § 1226(a)' regulatory framework and flies in the face of due process. See supra Part II.A. Therefore, the Court concludes that Mr. Ruvalcaba must be immediately released from government custody so that he may benefit from all the procedures he is entitled to. That is what "law and justice" require. See 28 U.S.C. § 2243.

## IV.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** the Petition for Writ of Habeas Corpus (ECF No. 1-1) is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents must **IMMEDIATELY RELEASE** Petitioner from detention **ON HIS OWN RECOGNIZANCE**. Respondents are **ENJOINED** from imposing any constraints on Petitioner's liberty unless, and until, they properly detain him pursuant to § 1226(a), its implementing regulations, and the United States Constitution. Respondents have until **5:00 P.M.** on **May 16, 2026**, to comply with this Order.

**IT IS FURTHER ORDERED** Respondents must **INFORM** Petitioner's Counsel of the date, time, and location of Petitioner's release **at least two hours before** they effectuate it.

**IT IS FURTHER ORDERED** that, upon Petitioner's release, Respondents must **RETURN** his personal property, including, but not limited to, his personal identification document(s), employment authorization form(s), *etc*.

**IT IS FURTHER ORDERED** Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** the Parties shall file a joint status report by **May 18, 2026**, which confirms the date, and time, of Petitioner's release from detention. The status report must also confirm Respondents' compliance with this Court's directives regarding the conditions of his release.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen

this case to enforce the judgment without filing a separate case.

**DATED:** May 15, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**